Filed 2/15/22; Certified for Publication 3/16/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| Adoption of E.B., a Minor. | C092765 |
| M.B., | (Super. Ct. No. 19AD00137) |
| Plaintiff and Appellant, | |
| v. | |
| DEPARTMENT OF SOCIAL SERVICES ADOPTIONS SERVICES BUREAU, | |
| Respondent. | |

This appeal arises from a petition to adopt E.B., a now two-year old child born to his biological parents, J.O. and M.B. and raised by them and appellant.

J.O. and M.B. married in 2007 and for more than 15 years also have been in what they describe as a committed, polyamorous relationship with appellant. In 2018, appellant, J.O., and M.B. decided to have a child together. They agreed J.O. and M.B.

1

would be the child's biological parents, appellant would adopt the child, and J.O. and M.B. would maintain their parental rights. Together, the three of them would share equally in parenting rights and responsibilities.

After E.B. was born, appellant began adoption proceedings. Consistent with the requirements for an independent adoption, California's State Department of Social Services (CDSS) conducted an investigation and concluded the adoption was in E.B.'s best interest. Accordingly, CDSS recommended the uncontested adoption be granted.

Rejecting CDSS's recommendation, the trial court denied appellant's petition to adopt E.B. Relying on Family Code section 7612,[1] the trial court found appellant had not yet fulfilled E.B.'s needs for a substantial period of time, and there was no likelihood that E.B. would be taken from appellant, resulting in detriment to the child. Appellant moved the court to vacate its order. The trial court denied that motion as well.

Appellant now appeals the trial court's decision; CDSS joins in her appeal. Both parties argue the trial court applied the incorrect law to appellant's adoption petition and, under the correct law, section 8617, the petition to adopt E.B. should have been granted. We agree the trial court applied the incorrect law and remand the matter to allow the trial court to exercise its discretion under the applicable statute.

BACKGROUND

Appellant, J.O., and M.B., have been in a committed, polyamorous relationship for more than 15 years. In 2018 they decided to have, and raise, a child together. The three of them planned the child's conception and birth: J.O. and M.B. would be the child's biological parents, appellant would adopt the child after he was born, and together the three chose the child's name. Before E.B. was born, they executed an "Agreement to Co-Parent," formalizing their intention to be the child's equal co-parents.

---

[1] Undesignated statutory references are to the Family Code.

In May 2019, J.O. gave birth to E.B. Appellant was there throughout the labor and delivery process, and she was treated by medical staff as an equal parent. Following his birth, however, E.B. suffered complications and was admitted to the neonatal intensive care unit (NICU). M.B. and J.O were permitted to enter the NICU to be with E.B. without question, appellant was not. E.B. was in the NICU for five days. The staff eventually allowed appellant to join J.O. and M.B. and participate in discussions with physicians regarding E.B.'s care.

In anticipation of E.B.'s birth, appellant (a university professor) opted out of teaching courses during the summer and took a three-month maternity leave in the fall, giving her six months to provide full-time care for E.B. During those six months, appellant bottle-fed E.B. during the week, comforted him, engaged in age-appropriate play activities, coordinated and took him to doctors' appointments, and took him to weekly swim lessons and library story time events. When appellant returned to work in January 2020, she went back only part time to allow her more time to care for E.B. When the pandemic began, appellant, J.O., and M.B. all began working from home and continued to share equally in parenting E.B.

Like he does with J.O. and M.B., E.B. seeks out appellant for comfort, he complains to her when he is hungry, and giggles at her efforts to amuse him. E.B. brings appellant books to read to him and points her to the door when he wants her to take him outside or go for a walk. E.B. calls appellant "momma." Appellant, J.O., and M.B. jointly discuss and agree upon parenting decisions for E.B.

On June 15, 2019, appellant, J.O., and M.B. executed an "Independent Adoption Placement Agreement," agreeing to establish legal parentage for each person and allowing them to co-parent E.B. The purpose of the agreement was to acknowledge their commitment to share legal and financial responsibility for E.B. They agreed to cooperate and consent to all legal procedures required to establish appellant as one of E.B.'s legal parents.

3

Approximately 30 days later, appellant filed a request for independent adoption to adopt E.B. as his third parent. CDSS conducted the required investigation. CDSS learned that appellant, J.O., and M.B. were in a polyamorous relationship, and living in the same home. The three adults "received joint physical custody of [E.B.] when [E.B.] was discharged from the hospital." CDSS visited the family and found E.B. well-adjusted to the home and "developing satisfactorily."

CDSS also found appellant, J.O., and M.B., "have the resources to be able to provide a stable environment for a child. [Appellant, J.O., and M.B.] will share legal and parental responsibilities of raising a child together."

"An appropriate parent-child relationship is well established. It appears to be in the best interests of the child to have this adoption completed." CDSS understood and accepted that J.O. and M.B. would maintain their parental rights and share them with appellant. On March 3, 2020, CDSS filed a report recommending the adoption as in E.B.'s best interest.

Before hearing appellant's petition, however, the trial court asked the parties to submit briefs addressing "[t]he legal basis for this adoption, including any cases in which courts have approved adoptions in similar circumstances, and an explanation as to how any such cases apply here; and [¶] Facts and argument as to why this adoption will serve public policy and the best interest of the child."

On June 22, 2020, the court held a video hearing on appellant's petition to adopt E.B. A CDSS representative, along with family members, were available in the "waiting room" but were not asked to participate. The court did hear testimony from J.O. and M.B., both of whom supported appellant's petition. The court expressed doubt as to whether the adoption could be granted, heard argument from appellant's counsel, and took the matter under submission.

Approximately one week later, the trial court asked appellant to submit another brief addressing "the factual and legal basis for concluding that this is one of the rare

4

cases where 'recognizing only two parents would be detrimental to the child.' [Appellant] should address all relevant factors, including, but not limited to: (1) the extent to which [appellant] has fulfilled the child's physical needs and the child's psychological needs for care and affection; (2) whether [appellant] has done so for a 'substantial period of time'; (3) whether there is a harm that the child will be removed from [appellant]; and (4) if the harm articulated in response to #3 is no more than speculative, the legal basis for concluding that adoption is appropriate at this time."

Appellant's counsel filed a brief addressing the court's concerns and explaining in detail why the adoption was legally appropriate. Counsel included declarations from appellant, J.O., M.B., appellant's brother, and E.B.'s biological grandparents. The extended family enthusiastically supported appellant's petition, recognizing that appellant was an important part of E.B.'s life and was "thriving in [the] secure and loving environment" created by appellant, J.O., and M.B.

There was no opposition to the adoption.

After hearing additional argument on July 13, 2020, the trial court denied appellant's petition. The court found appellant to be a "presumed parent" under section 7611, subdivision (d), but determined she failed to meet the elements of section 7612, subdivision (c). Quoting *In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1088, the trial court found this was not one of the " 'rare cases' where 'recognizing only two parents would be detrimental to the child.' "

Explaining its decision further, the trial court noted appellant had not fulfilled E.B.'s physical and psychological needs for a substantial period of time because E.B. was "just barely one year old." The court also noted appellant had not shown "there is a harm that the child will be removed from her," because the biological parents supported appellant's ongoing relationship with the child. Any future harm, the court opined, was speculative. Finally, the court offered that there were "various other remedies available

5

to [appellant] to address her concerns," including drafting a will reflecting the intent for appellant to become E.B.'s guardian should something happen to J.O. and M.B.

Appellant filed a motion to vacate the court's order. She argued the undisputed evidence and law supported granting the adoption. Before her motion was heard, CDSS filed an amended report with the trial court reiterating its recommendation that the adoption be approved and explaining that the adoption was proper under section 8617, subdivision (b): "In accordance with Family Code 8617 (b), [J.O. and M.B.] exercised their right to waive their termination of parental duties and responsibilities of the child when they signed the addendum to the Statement of Understanding (AD 926) and the addendum to the Independent Adoption Placement Agreement (AD 924). It appears as if [J.O. and M.B.] were properly advised in accordance with Family Code Section 8801.5 of their rights in California by Betty Bleicher, LCSW, an Adoption Service Provider, as defined in Family Code Section 8502(a)."

The court denied the motion to vacate. The court explained it was not required to grant the adoption but had discretion to do so under section 7612, subdivision (c). The court reiterated its finding that not enough time had passed in E.B.'s life to "to establish the type of relationship that would make this one of the 'rare cases' where 'recognizing only two parents would be detrimental to the child.' *In re Donovan L.*, 244 Cal.App.4th at 1088."

The trial court also found it significant that E.B. had two other, active and involved parents. The court believed "it would be more appropriate to allow some time to pass until both [appellant] and the child can demonstrate the strength of the relationship before making the permanent adoption decision, particularly since there is no evidence of any risk that the child will be separated from [appellant] any time soon."

The court went on to say appellant "need not wait for a crisis to occur before seeking adoption. But there must at least be the *prospect* that a successful, established custodial arrangement would be disrupted. Third-parent adoption was not designed as a

6

mechanism to simply affirm or formalize what is already a strong relationship between three presumed parents. Its purpose is to protect the child from harm in the event of a conflict between the presumed parents."

DISCUSSION

A. *Law Governing Appellant's Petition to Adopt E.B.*

The trial court erred in relying on section 7612, subdivision (c) to deny appellant's petition, finding she failed to meet her burden under that section. Section 7612, subdivision (c) does not apply to adoptions like the one at issue here, where an existing parent (or parents) consents to an adoption, but maintains their parental rights.[2] These adoptions, are governed by section 8617.[3]

" 'The right to adopt a child, and the right of a person to be adopted as the child of another, are wholly statutory.' [Citation.] California's adoption statutes appear in division 13 of the Family Code, which is divided into three parts. Part 1 (§§ 8500-8548) provides definitions applicable throughout. Part 2 (§§ 8600-9206) addresses adoption of unmarried minors, and part 3 (§§ 9300-9340) adoption of adults and married minors. The part with which we are concerned, part 2, is in turn divided into several chapters. Chapter 1 (§ 8600 et seq.) contains general provisions. Subsequent chapters deal with agency adoptions (§ 8700 et seq.), independent adoptions (§ 8800 et seq.), intercountry

---

[2]    As discussed in *Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 436 (*Sharon S.*) the term "limited consent adoption" is used by CDSS to refer to an adoption in which a birth parent simultaneously retains parental rights and consents to an adoption.

[3]    The phrase "limited consent adoptions," does not exist in the statute. CDSS, however, uses the phrase to describe adoptions like the one at issue here. We understand the phrase to mean the existing parent's, or parents', consent to the adoption is limited only because they are not waiving their own parental rights. The adoptive parent (or parents) however, will receive the full panoply of parental rights.

adoptions (§ 8900 et seq.), and stepparent adoptions (§ 9000 et seq.)." (*Sharon S., supra*, 31 Cal.4th at pp. 424-425.)

Section 7612, subdivision (c) is not an adoption statute. It is part of the Uniform Parentage Act (UPA), which " 'provides a comprehensive scheme for judicial determination of paternity, and was intended to rationalize procedure, to eliminate constitutional infirmities in then existing state law, and to improve state systems of support enforcement.' [Citations.]" (*Adoption of Michael H.* (1995) 10 Cal.4th 1043, 1050.) Section 7612, subdivision (c) applies to claims of disputed parentage. It is in that context, not adoption, a court may find "that more than two persons *with a claim to parentage under this division* are parents if the court finds that recognizing only two parents would be detrimental to the child." (§ 7612, subd. (c), italics added; see *Adoption of Michael H., supra*, at p. 1050.)

Appellant did not, however, petition the trial court to establish parentage of E.B. under the UPA. Rather she filed a petition to adopt E.B. as a third parent.[4] In petitioning to adopt E.B., appellant proceeded under the independent adoption provisions of the Family Code, not the UPA. Thus, it was error to evaluate her application under the burdens of section 7612, subdivision (c).

## B. *Independent Adoptions*

State law provides various adoption procedures including agency adoptions, intercounty adoptions, stepparent adoptions, and, as relevant here, independent adoptions. (See *Sharon S., supra*, 31 Cal.4th at p. 425.) In an independent adoption, no state or local agency takes custody of the child or joins in the adoption petition. (§ 8524.) Rather, the existing parent(s) consent to the adoption and place their child directly with the adoptive

---

[4] Notably, appellant used Judicial Council form ADOPT-200, a mandatory form, to petition the court. Form ADOPT-200 does not mention section 7612, or any part of the UPA. (§§ 7600-7730.)

parent(s).  (§ 8801; *In re Michael R.* (2006) 137 Cal.App.4th 126, 137.)  In order to place their child with the adoptive parent(s), the existing parent(s) must execute an independent adoption placement agreement (the Placement Agreement), in which the existing parent(s) agree either to terminate *or retain their parental rights*.  (§ 8801.3.)  If this consent is not revoked within 30 days, the Placement Agreement becomes permanent and irrevocable.  (§ 8814.5, subd. (a)(1); *Sharon S., supra*, at p. 422.)

Once the Placement Agreement and an addendum are signed, "the prospective adoptive parent may petition for adoption.  [Citation.]  The court clerk must give CDSS notice of the petition [citation], and the petitioner must file a copy of the petition with CDSS.  [Citation.]  [¶]  Subsequently, it is incumbent on CDSS to 'investigate the proposed independent adoption' [citation] and 'ascertain whether the child is a proper subject for adoption and whether the proposed home is suitable for the child.' [Citations.]  CDSS interviews the petitioner and the birth parents.  [Citations.]  Within 180 days after the petition is filed, CDSS must 'submit to the court a full report of the facts disclosed by its inquiry with a recommendation regarding the granting of the petition.'  [Citations.]  A copy of CDSS's report is given to the petitioner.  [Citation.]  Although the report is not binding, the court is to accord due weight to CDSS's expertise. [Citation.]"  (*Sharon S., supra*, 31 Cal.4th at p. 425.)

As noted above, an existing parent or parents can retain their parental rights, while also agreeing to confer parental rights on another parent or parent(s).  (§ 8617, subd. (b).) Section 8617, subdivision (b) provides that "termination of the parental duties and responsibilities of the existing *parent or parents* under subdivision (a) may be waived if both the existing *parent or parents* and the prospective adoptive *parent or parents* sign a waiver at any time prior to the finalization of the adoption.  The waiver shall be filed with the court."  (*Ibid*, italics added.)

If, as here, the existing parent(s) choose to proceed with the adoption, the parties must execute a document titled "Addendum to the Independent Adoption Placement

9

Agreement (AD 924)." (See *Sharon S., supra*, 31 Cal.4th at p. 423.) The addendum is a document created by CDSS, which allows for an express indication that the existing parent(s) parental rights are to be retained. (*Ibid.*) Executing the addendum can, as it did here, result in an adoption where the child will have more than two legal parents. Such a result was contemplated by the Legislature.

Subdivision (b) was added to section 8617 in 2013, with the passage of Senate Bill No. 274 (2013-2014 Reg. Sess.).[5] (Stats. 2013, ch. 564, § 7.) As recorded in the Assembly Judiciary Committee's June 17, 2013 report on Senate Bill No. 274, the addition of subdivision (b) to section 8617 was specifically intended to codify the holding in *Sharon S.*, permitting the existing parent(s) to retain their parental rights while consenting to a child's adoption, "and appl[y] it to situations where the child may have more than two parents." (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 274 (2013-2014 Reg. Sess.) as amended May 14, 2013, pp. 7-8.) To demonstrate its intent, the Legislature drafted subdivision (b) to include the phrase "parent or parents" to describe both the existing parent(s) and the prospective adoptive parent(s) in an independent adoption. In so doing, the Legislature authorized independent adoptions that result in a child having more than two parents.

Importantly, CDSS has previously applied section 8617, subdivision (b) to allow third parent adoptions, and their construction of adoption statutes is entitled to "substantial deference." (See *Sharon S., supra*, 31 Cal.4th at pp. 436-437.) As CDSS notes here, "throughout these proceedings and before, [CDSS has] construed section 8617, subdivision (b) to allow biological parents and a prospective adoptive parent to agree to an adoption *that results in all three adults sharing coextensive parental rights*." (Italics added.)

---

[5]     CDSS's request for judicial notice, filed on June 24, 2021, which asks this court to take judicial notice of the legislative history of Senate Bill No. 274, is hereby granted.

*C. Remand For Trial Court To Exercise Its Discretion*

On remand, the trial court is to consider only the essential elements of every valid adoption, as noted by our Supreme Court: "[A] voluntary and informed parental consent to the adoption except where the parent has surrendered or has been judicially deprived of parental control (§§ 8604-8606); a suitable adoptive parent at least 10 years older than, or in a specified preexisting family relationship with, the child (see §§ 8601, 8717, 8801, 8811-8811.5); and a judicial determination that 'the interest of the child will be promoted by the adoption.' (§ 8612.)" (*Sharon S., supra*, 31 Cal.4th at p. 429.)

In considering those elements, it is worth noting the following facts appear to be undisputed: (1) the required paperwork has been submitted, and (2) J.O. and M.B. have given their informed, voluntary consent to appellant's adoption petition. Moreover, CDSS completed its investigation and concluded appellant is a suitable adoptive parent; that conclusion also has not been challenged.

The Legislature has made the policy judgment that it is in the best interests of California to permit a child to have more than two parents if the child's best interests are served by an adoption. The wisdom of the policy is supported by the Supreme Court in *Sharon S., supra*, 31 Cal.4th at pp. 425, 429. Whether the adopting parent is suitable and whether a particular child's best interests will be "promoted by the adoption" (§ 8612; *Sharon S., supra*, 31 Cal.4th at pp. 425, 429) is a judgment vested in the trial court, guided by the expertise and fact finding of CDSS. The "best interests of the child" is a familiar standard, as is the edict that CDSS's recommendation must be given "due weight" in considering a petition to adopt. We shall remand to permit the court to apply the standard within the proper statutory framework.

DISPOSITION

The judgment of the trial court is reversed and the matter is remanded to allow the trial court to exercise its discretion under the authorities discussed in this opinion.

                                              /s/
                                         RAYE, P. J.

We concur:

    /s/
HULL, J.

    /s/
RENNER, J.

Filed 3/16/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| Adoption of E.B., a Minor. | C092765 |
| M.B.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF SOCIAL SERVICES ADOPTIONS SERVICES BUREAU,<br><br>Respondent. | (Super. Ct. No. 19AD00137)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

APPEAL from a judgment of the Superior Court of Sacramento County, Lauri A. Damrell, Judge. Reversed.

C. Athena Roussos; HMS Law Group and M. Jane Pearce for Plaintiff and Appellant.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown and Kevin L. Quade, Deputy Attorneys General, for Respondent.

1

THE COURT:

The opinion in the above-entitled matter filed February 15, 2022, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


      /s/
RAYE, P. J.


      /s/
HULL, J.


      /s/
RENNER, J.